**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  12 C 0528 |
| | ) | |
| | ) | |
| GLEN DEWLOW, RICHARD BROGAN, | ) | |
| and MICHAEL HOLMES, Cook County | ) | |
| Correctional Officers, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On January 24, 2012, pro se Plaintiff James Hampton filed the present Complaint against

certain Correctional Officers at the Cook County Department of Corrections ("CCDOC"),

namely, Defendants Glen Dewlow, Richard Brogan, and Michael Holmes.  Mr. Hampton

specifically alleges a Fourteenth Amendment due process deliberate indifference claim pursuant

to 42 U.S.C. § 1983.  Before the Court is Defendant Officers' motion for summary judgment

brought pursuant to Federal Rule of Civil Procedure 56(a).  For the following reasons, the Court

grants Defendants' summary judgment motion and dismisses this lawsuit in its entirety.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Because Mr. Hampton is a pro se litigant, Defendants served him with a "Notice to Pro

Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of

Illinois Local Rule 56.2.  The notice explains the consequences of failing to properly respond to

a motion for summary judgment and statement of material facts under Federal Rule of Civil

Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Although courts must construe pro se pleadings liberally, *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012), a plaintiff's pro se status does not absolve him from complying with the federal and local procedural rules. *See Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008); *Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001). As the Supreme Court instructs, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

Here, some of Mr. Hampton's Rule 56.1(b)(3)(B) Responses are evasive and do not directly contradict Defendants' Rule 56.1(a)(3) Statement of Facts, including ¶¶ 11-14, 19, 21,

2

25, 26, and 30-32, therefore, the Court admits these facts as true. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000) (requirements for Rule 56.1 responses "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."). Likewise, the Court will not address arguments that Mr. Hampton raises in his Rule 56.1(b)(3) Response, including ¶¶ 5, 18, 19, 24, 30, and 31. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Further, Mr. Hampton has set forth additional facts in many of his Local Rule 56.1(b)(3)(B) Responses, and pursuant to the Local Rules, the Court will not consider these additional facts, but instead must rely on Mr. Hampton's Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See Ciomber*, 527 F.3d at 643-44. The particular Local Rule 56.1(b)(3)(B) Responses to which Mr. Hampton has added facts, include ¶¶ 5, 6, 8, 10-14, 16-21, 24-27, 39-33, 35, and 36.

## II.    Relevant Facts

Mr. Hampton was a pre-trial detainee at the Cook County Jail from February 8, 2007 until November 28, 2011. (R. 59, Defs.' Rule 56.1 Stmt. Facts ¶ 1; R. 65, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.) Mr. Hampton is now in the custody of the Illinois Department of Corrections ("IDOC"), serving a twenty-year sentence. (Defs.' Stmt. Facts ¶ 1; Pl.'s Stmt. Facts ¶ 1.) Defendant Dewlow is a Correctional Officer at the CCDOC and is currently assigned to external operations. (Defs.' Stmt. Facts ¶ 2; Pl.'s Stmt. Facts ¶ 2.) At all times relevant to this lawsuit, Defendant Dewlow was assigned to the Receiving Classification and Diagnostic Center ("RCDC.") (Defs.' Stmt. Facts ¶ 2; Pl.'s Stmt. Facts ¶ 2.) Defendant Brogan is a Commander at

the CCDOC and during the relevant time period he was assigned to the RCDC. (Defs.' Stmt. Facts ¶ 3; Pl.'s Stmt. Facts ¶ 3.) Presently, Defendant Holmes is the Assistant Executive Director of CCDOC, but during the relevant time period he was a Superintendent assigned to the RCDC. (Defs.' Stmt. Facts ¶ 4; Pl.'s Stmt. Facts ¶ 4.)

Mr. Hampton was initially admitted into the Cook County Jail as a pre-trial detainee in February 2007, after which he requested to be placed into protective custody because of the media attention given to his arrest. (Defs.' Stmt. Facts ¶ 7; Pl.'s Stmt. Facts ¶ 6.) Mr. Hampton was housed in protective custody in Division 9 for three years until he sustained an injury to his Achilles tendon while playing basketball. (*Id.* ¶ 9.) On June 23, 2010, Cermak Health Services admitted him for same day surgery for his injury. (*Id.*) Thereafter, Mr. Hampton was transferred to Division 8/Cermak Health Services for recovery and physical therapy, where he remained until September 2011. (*Id.*)

When Cook County Jail pre-trial detainees go to the Circuit Court of Cook County for their criminal cases, personnel transport them to and from three distinct points — the detainee's living unit, the RCDC, and the courtroom. (*Id.* ¶ 11.) RCDC officers are assigned solely to the RCDC area and are charged with facilitating the transport of detainees between court and the Cook County Jail. (*Id.* ¶ 15.) The RCDC officers also hold and secure the detainees in the RCDC area until it its time to take them to either court or their living unit. (*Id.*) When the courtrooms are ready for an individual or group of detainees, an officer of the court will come to the RCDC area, after which the detainees go from their holding area to the hallway called the tunnel. (*Id.* ¶ 14.)

4

At his deposition, Mr. Hampton testified that on January 10, 2011, Defendant Dewlow placed him in a general population bullpen in the RCDC for about a half an hour. (*Id*. ¶ 20, Ex. A, Hampton Dep., at 74-76.) At that time, Mr. Hampton was still in a wheelchair recovering from his Achilles heel surgery. (Pl.'s Stmt. Facts ¶ 28.) Prior to going to the holding area, Mr. Hampton showed Defendant Dewlow a paper requesting protective custody, after which Defendant Dewlow stated that the paperwork was not valid. (Defs.' Stmt. Facts ¶ 22.) Mr. Hampton also told Defendant Dewlow that he feared the general population of the Cook County Jail and that he did not think it was a good idea for him to be in the general population. (*Id*. ¶ 21.) While in the bullpen, one of the other detainees, who Mr. Hampton did not know, slapped him and another unknown detainee took his lunch. (*Id*. ¶ 25; Ex. A, Hampton Dep., at 74-76.) At his deposition, Mr. Hampton testified that he did not go to the hospital after being slapped, stating "a slap ain't nothing." (Defs.' Stmt. Facts ¶ 26; Ex. A., Hampton Dep., at 78.) Mr. Hampton filed a grievance against Defendant Dewlow concerning this January 10, 2011 incident. (Defs.' Stmt. Facts ¶ 19.)

In addition, Mr. Hampton passed through the RCDC on May 18, 2011, at which time Defendant Dewlow was at the end of the tunnel where detainees waited to go to court. (*Id*. ¶¶ 13, 27-28.) Defendant Dewlow told Mr. Hampton that he was too early to be in the tunnel and then Mr. Hampton requested that Defendant Dewlow escort him back to the proper place to wait because he feared being in the general population. (*Id*. ¶¶ 29, 30.) Defendant Dewlow declined Mr. Hampton's request after which Mr. Hampton began to yell. (*Id*. ¶ 31.) Defendant Dewlow then issued Mr. Hampton a disciplinary ticket for obstructing the transport process. (*Id*. ¶ 32.) Mr. Hampton filed a grievance against Defendant Dewlow for writing the disciplinary ticket.

(*Id.* ¶ 19, 32. )  It is undisputed that Defendants Brogan's and Holmes' interactions with Mr.

Hampton were solely in response to his grievances about Defendant Dewlow.  (*Id.* ¶ 34.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing that

there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary

judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).  "A plaintiff must begin to meet

this burden by submitting admissible, supporting evidence in response to a proper motion for

summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

## ANALYSIS

In response to Defendant Officers' motion for summary judgment, Mr. Hampton argues

that Defendant Officers were deliberately indifferent to a serious risk of safety when he went

through the RCDC due to his protective custody status.  During the relevant time period, Mr.

Hampton was a pre-trial detainee, therefore, his deliberate indifference claim arises under the

Fourteenth Amendment's due process clause, which is governed under the same standards as Eighth Amendment claims. *See Rice ex rel. Rice v. Correctional Med. Servs.,* 675 F.3d 650, 664 (7th Cir. 2012); *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). "Depriving a prisoner of 'basic human needs like food, medical care, sanitation, and physical safety' violates the Eighth Amendment, but only if the defendant acted with deliberate indifference to the prisoner's serious needs; negligence is not enough." *Smith v. Sangamon County Sheriff's Dep't,* 715 F.3d 188, 191 (7th Cir. 2013) (citation omitted). Indeed, "[b]oth the Eighth and Fourteenth Amendments [] 'impose upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoners.'" *Id.* (citation omitted). A successful deliberate indifference claim concerning an inmate's safety has two requirements: "(1) the harm that befell the prisoner [is] objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Rosario*, 670 F.3d at 821. Under the first element, Mr. Hampton must establish that he "suffered an objectively serious harm that presented a substantial risk to his safety." *Minix v. Canrecci,* 597 F.3d 824, 831 (7th Cir. 2010); *see also Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) ("First, an inmate must demonstrate that, objectively, the deprivation he suffered was 'sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities.'") (citation omitted). Under the second element, deliberate indifference requires (1) a showing that Defendants were aware of a substantial risk of serious injury to Mr. Hampton, but (2) "nevertheless failed to take appropriate steps to protect him from a known danger." *Smith,* 715 F.3d at 191.

Viewing the facts and all reasonable inferences in Mr. Hampton's favor — as the Court is required to do at this procedural posture — Mr. Hampton has failed to present sufficient evidence creating a genuine factual dispute that he "suffered an objectively serious harm that presented a substantial risk to his safety." *See Minix*, 597 F.3d at 831. Although an unknown detainee slapped him while he was in the bullpen on January 10, 2011, Mr. Hampton testified that after being slapped, he did not go to the hospital stating "a slap ain't nothing." *See, e.g., Lytle v. Gebhart,* 14 Fed.Appx. 675, 678, 2001 WL 838399, at *2 (7th Cir. 2001) (unpublished) ("An isolated and short-lived fist fight simply does constitute a denial of 'the minimal civilized measure of life's necessities.'") (citation omitted); *see also Owens v. Hinsley,* 635 F.3d 950, 954 (7th Cir. 2011) (cellmates' "surprise punch [and] wild swings did not give the defendants reason to believe that [plaintiff] faced an imminent and substantial threat to his safety."). Similarly, there is no evidence in the record that Mr. Hampton suffered serious harm and a substantial risk to his safety when he was waiting to go to court on May 18, 2011.[1] Accordingly, Mr. Hampton has failed to set forth sufficient evidence to fulfill the first element of his Fourteenth Amendment deliberate indifference claim. The Court nevertheless turns to the second element of Mr. Hampton's deliberate indifference claim.

First, Mr. Hampton has failed to present sufficient evidence that Defendant Dewlow was aware of any substantial risk of serious injury. *See Smith,* 715 F.3d at 191; *see also Santiago v.*

---

[1] Because inmates can seek "injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm," they are not required to have suffered physical injury when seeking injunctive relief. *See Farmer v. Brennan,* 511 U.S. 825, 845, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811 (1994). In any event, Mr. Hampton is now in IDOC custody, therefore, his request for injunctive relief is moot. *See Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief ... become[s] moot.").

*Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (defendants must have actual knowledge of impending harm). Although there is evidence in the record that Mr. Hampton feared the general population at the Cook County Jail, a general risk of violence "does not by itself establish knowledge of a substantial risk of harm." *Shields v. Dart,* 664 F.3d 178, 181 (7th Cir. 2011); *Wilson v. Ryker* 451 Fed.Appx. 588, 590, 2011 WL 6145397, at *2 (7th Cir. 2011) (unpublished) (detainee must identify "tangible or imminent risk of harm."). As the Seventh Circuit has repeatedly explained, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson,* 538 F.3d 763, 777 (7th Cir. 2008) (citation omitted).

Meanwhile, although Mr. Hampton requested to be in protective custody in 2007 due to the media attention concerning his arrest, it is unclear from the record whether he was in protective custody during the two incidents at issue. Assuming Mr. Hampton was in protective custody on January 10, 2011 and May 18, 2011, and that Defendant Dewlow knew as such, being in protective custody is not sufficiently specific "to allow an inference that [Defendant Dewlow's] inaction is designed to produce or allow harm." *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012). In other words, Mr. Hampton has failed to present any evidence that Defendant Dewlow's conduct in putting him in the RCDC bullpen with the general population exhibited "a total unconcern" for his welfare and safety. *See Rosario,* 670 F.3d at 821 (deliberate indifference standard imposes "a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.") (citation omitted); *see also Santiago*, 599 F.3d at 756 ("failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison

officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.'" )
(citation omitted).  Simply put, there is no evidence in the record that Defendant Dewlow
showed a total unconcern for Mr. Hampton's safety and welfare or that his conduct effectively
condoned the other detainees slapping Mr. Hampton and taking his food.  Likewise, Mr.
Hampton has not presented any evidence that Defendant Dewlow showed a total unconcern for
his safety in relation to the May 18, 2011 incident in which Defendant Dewlow did not escort
Mr. Hampton to the proper waiting area.  Therefore, Mr. Hampton has not presented sufficient
evidence to create a genuine factual dispute for trial concerning the second element of his
deliberate indifference claim.

Furthermore, to establish personal liability in a Section 1983 action, Mr. Hampton must
show that Defendants Holmes and Brogan, who were CCDOC supervisors, caused a deprivation
of a federal right.  *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011).  More
specifically, in order for supervisors to be personally liable, "they must know about the conduct
and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."
*Backes v. Village of Peoria Heights, Ill.,* 662 F.3d 866, 870 (7th Cir. 2011).  Here, it is
undisputed that Defendants Brogan's and Holmes' interactions with Mr. Hampton were solely in
response to his January 10, 2011 and May 18, 2011 grievances concerning Defendant Dewlow
and, as discussed above, Defendant Dewlow's conduct did not violate Mr. Hampton's
constitutional rights.  Therefore, the Court grants Defendants' motion for summary judgment as
Defendants Holmes and Brogan because there is no evidence of their personal involvement in
depriving Mr. Hampton of his constitutional rights.\

10

On a final note, the Court need not address Defendants' qualified immunity defense because Mr. Hampton has failed to establish a deprivation of a constitutional right in the first instance. *See Mann v. Vogel*, 707 F.3d 872, 883 (7th Cir. 2013).

## CONCLUSION

For these reasons, the Court grants Defendants' summary judgment motion and dismisses this lawsuit in its entirety. Because the Court addressed Defendants' arguments regarding Mr. Hampton's Local Rule 56.1(b)(3)(B) Response within the context of this Memorandum, Opinion, and Order, the Court denies Defendants' motion to strike as moot.

**Dated:** September 18, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

11